SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
THOMAS R. KAUFMAN, Cal. Bar No. 177936
tkaufman@sheppardmullin.com
MICHAEL L. GALLION, Cal Bar No. 189128
mgallion@sheppardmullin.com
PAUL BERKOWITZ, Cal Bar No. 251077
pberkowitz@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701

MANHEIM INVESTMENTS, INC. and
COX ENTERPRISES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. IBARRA, an individual; and ROES 1-50 on behalf of themselves and in a representative capacity for all others similarly situated and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>MANHEIM INVESTMENTS, INC., a Nevada Corporation; COX ENTERPRISES, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. **'13CV0857 JAH NLS**<br><br>(Superior Court Case No. 37-2011-00102889-CU-OE-CTL)<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1332(a), 1441, AND 1446; DECLARATION OF MARY ELLEN MARCILLIAT-FALKNER; DECLARATION OF SHAUNA S. MUHL; DECLARATION OF THOMAS R. KAUFMAN**<br><br>Complaint Filed: December 22, 2011 |

SMRH:404586331.2                                    NOTICE OF REMOVAL

**TO THE HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendants Manheim Investments, Inc. ("Manheim") and Cox Enterprises, Inc. ("CEI")[1] (collectively, "Defendants"), hereby remove the above-entitled action from the Superior Court of the State of California in and for the County of San Diego, to the United States District Court for the Southern District of California.  This Court has original subject matter jurisdiction over Plaintiff's lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million.  Accordingly, removal is proper based on the following grounds:

## BACKGROUND

1.  On December 22, 2011, Plaintiff Jose Ibarra ("Plaintiff") commenced a lawsuit in San Diego Superior Court entitled, *Jose Ibarra v. Manheim Investments, Inc. et al.*, Case No. 37-2011-00102889-CU-OE-CTL (hereinafter the "State Court Action").  Plaintiff's Complaint asserts eleven causes of action against Defendants for: (1) failure to pay minimum wages; (2) failure to pay wages and overtime compensation; (3) failure to provide meal and rest periods; (4) failure to timely pay wages due at termination; (5) conversion; (6) unfair business practices under Business & Professions Code § 17200; (7) failure to provide accurate wage statements; (8) theft of labor; (9) declaratory relief; (10) accounting; and (11) injunctive relief.  Plaintiff brings these claims on behalf of himself and a putative

---

[1]   CEI has been improperly named as a party to this lawsuit.  Specifically, this Court lacks authority to exercise personal jurisdiction over CEI because no constitutionally sufficient basis for jurisdiction exists between CEI and the State of California.  Indeed, the Northern District of California has recognized that it did not have general or specific personal jurisdiction over CEI when, under a similar factual scenario, it granted CEI's Motion to Dismiss for lack of personal jurisdiction in *Martinez, et al. v. Manheim Central California, et al.*, Case No. 10-cv-01511 (April 18, 2011).

class of "all present and former employees of Defendants holding a non-exempt position during the statutory time period," or from December 22, 2007 to the present.[2] Despite his broad and overreaching allegations, Plaintiff alleges in his Complaint that "[t]he aggregate claims of the individual class members do not exceed the $5,000,000 jurisdictional threshold for federal court under the Class Action Fairness Act."[3]

2. On January 9, 2012, Plaintiff served Manheim with a copy of the Complaint. On January 10, 2012, Plaintiff served CEI with a copy of the Complaint. A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit "A."** A true and correct copy of Manheim's Notice of Service of Process is attached hereto as **Exhibit "B."** A true and correct copy of CEI's Notice of Service of Process is attached hereto as **Exhibit "C."**

3. On February 7, 2012, Defendants timely and properly removed this case to federal court. The case was originally assigned to the Honorable Thomas J. Whelan. The case was eventually reassigned to the Honorable Cathy Ann Bencivengo and given Case No. 12cv318-CAB (BLMx). In their Notice of Removal, Defendants set forth ample evidence that the amount in controversy at the time of removal based on the totality of Plaintiff's alleged claims and prayer for relief significantly exceeded $5,000,000.

4. More than one year later, on February 26, 2013, this Court remanded the case to the Superior Court for the Superior Court for the State of California, County of San Diego.[4] Citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007), the Court held that, because Plaintiff expressly alleged that the amount in controversy in the lawsuit is under the $5,000,000 minimum to trigger

---

[2] Complaint ¶ 31.
[3] Complaint ¶ 17.
[4] Declaration of Thomas R. Kaufman Decl., ¶ 3, Exh. A.

CAFA jurisdiction, Defendants had to prove that the amount in controversy exceeded $5,000,000 by a "legal certainty" and that such a standard "'sets a high bar for a party seeking removal.'" The Court further explained that, to meet the legal certainty requirement, "Defendants must produce enough 'concrete evidence,'" to allow the Court "'to estimate with certainty the actual amount in controversy.'" The Court held that Defendants did not meet this high standard because Defendants made assumptions regarding the frequency of the alleged wage-and-hour violations that prevented the Court from ascertaining the amount in controversy to a legal certainty. For example, the Court pointed out in its Order that:

> Defendants d[id] not provide evidence as to the average number of days per week or hours per shift the putative class members worked. Accordingly, as Plaintiff points out, some of the class members may have only worked four hour shifts and thus would not be eligible for meal periods. Or some could have only worked one day per week, thus invalidating Defendants' assumption that each class member missed two meal and rest periods per week.[5]

**THE NEW UNITED STATES SUPREME COURT DECISION IN *STANDARD FIRE INSURANCE* MAKES CLEAR THAT THIS CASE PROPERLY BELONGS IN FEDERAL COURT AND THAT PLAINTIFF'S DISCLAIMER REGARDING THE AMOUNT IN CONTROVERSY IN HIS COMPLAINT SHOULD BE GIVEN NO WEIGHT**

5. Just three weeks after the Court issued its remand order, on March 19, 2013, the United States Supreme Court issued a decision that effectively overturns the Ninth Circuit's *Lowdermilk* decision. Specifically, in *Standard Fire Ins. Co. v. Knowles*, __ S.Ct. __, 2013 WL 1104735 (U.S. March 19, 2013), the United States Supreme Court unanimously held that a plaintiff cannot stipulate that the amount in controversy in the lawsuit is under the $5,000,000 threshold since the plaintiff, as a mere potential representative for an uncertified class, has no power to bind the class

---

[5] Order, at 4:21-26.

1 and require them to agree to a reduced recovery. Thus, district courts must "ignore"
2 such representations and instead simply "add[] up the value of the claim of each
3 person who falls with the definition of [the] proposed class and determine whether
4 the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may
5 proceed with the case."

6        6.      In reaching its conclusion, the Court cited with approval *Frederick v.*
7 *Hartford Underwriters*, 683 F.3d 1242 (10th Cir. 2012). In that case, the Tenth
8 Circuit rejected an attempt by a plaintiff to avoid federal jurisdiction by pleading in
9 the prayer that the class was seeking only a "total award for compensatory and
10 punitive damages [that] does not exceed $4,999,999.99." *Id*. at 1247. Based on the
11 Supreme Court's holding that attempted limitations by a plaintiff regarding the
12 amount in controversy should have no binding effect, Defendants must prove only
13 by a "preponderance of the evidence" that the amount in controversy requirement
14 has been met. *See Guglielmino v. McKee Food Corp.*, 506 F.3d 696-700 (9th Cir.
15 2007). As explained more fully below, Defendants have easily met that standard,
16 even if they cannot meet the inapplicable "legal certainty" standard the Court
17 previously utilized.

18                    **MINIMAL DIVERSITY EXISTS UNDER CAFA**

19       7.      The Court has original jurisdiction of this action under the Class
20 Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. §
21 1332(d)(2). Specifically, this action is removable, pursuant to the provisions of 28
22 U.S.C. §1441(a), as the amount in controversy exceeds $5 million, exclusive of
23 interest and costs, and is a class action in which at least one class member is a
24 citizen of a State different from that of at least one defendant.

25       8.      To satisfy CAFA's diversity requirement, a party seeking removal
26 need only show that minimal diversity exists – i.e., that one putative class member is
27 a citizen of a different state from that of one defendant. 28 U.S.C. § 1332(d)(2); *see*
28 *also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*

*Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement). Not only does minimal diversity exist, but complete diversity of citizenship exists because Plaintiff is a citizen of California, while none of the Defendants are a citizen of California.

9. Manheim is, and was at the time the State Court Action was commenced, a corporation organized under the laws of the State of Nevada with its principal place of business located in Atlanta, Georgia.[6] Thus, for purposes of diversity jurisdiction, Manheim is a citizen of the State of Nevada and/or Georgia, and is not a citizen of California.[7]

10. CEI is an improper entity to this action since the Court lacks authority to exercise personal jurisdiction over CEI because no constitutionally sufficient basis for jurisdiction exists between CEI and California. Nonetheless, CEI is, and was at the time the State Court Action was commenced, a corporation organized under the laws of the State of Delaware with its principal place of business located in the Atlanta, Georgia.[8] Thus, for purposes of diversity jurisdiction, CEI is a citizen of the State of Delaware and/or Georgia, and is not a citizen of California. *See* 28 U.S.C. § 1332(c).

11. Plaintiff Jose Ibarra is, and at all times relevant to this action was, a resident of San Diego, California.[9] Residence is *prima facie* evidence of domicile. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Accordingly, Plaintiff is a citizen of the State of California for purposes of diversity jurisdiction.

---

[6] Declaration of Shauna Muhl ("Muhl Dec."), ¶ 4.
[7] *See* 28 U.S.C. § 1332(c).
[8] Muhl Dec., ¶ 3.
[9] Complaint, ¶ 3.

12. Thus, the minimal diversity requirement of the CAFA is satisfied here because a member of the plaintiff class is a citizen of a state different from both Defendants. 28 U.S.C. § 1332(d)(2)(A); *see Davis v. Chase Bank U.S.A.*, 453 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) (holding that minimal diversity exists where named plaintiff and defendant are citizens of different states).

13. Doe Defendants: Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants 1-50, inclusive, does not deprive this Court of jurisdiction.

### **THE CAFA NUMEROSITY REQUIREMENT IS MET HERE**

14. With respect to the CAFA requirement of numerosity, Plaintiff alleges a putative class consisting of "all present and former employees of Defendants holding a non-exempt position during the statutory time period" from December 22, 2007 to the present.[10] Manheim employed approximately 1,900 non-exempt employees in California during the four-year period that preceded the filing of this lawsuit.[11] Therefore, the numerosity requirement under the CAFA is satisfied as the putative class consists of more than 100 individuals. 28 U.S.C. § 1332(d)(5)(B).

### **THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**

15. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5

---

[10] Complaint ¶ 31(A)-(H). Plaintiff also defines eight subclasses, which are defined as including all non-exempt individuals who did not receive all of their rest periods or were not paid rest period penalties, who did not receive all of their meal periods or were not paid meal period penalties, who worked "off-the-clock" without compensation, who were not paid proper overtime wages, who did not receive minimum wages, who received inaccurate wage statements, who were not timely paid wages upon separation of employment, and who have a right to injunctive relief. *Id.*

[11] Declaration of MaryEllen Marcilliat ("Marcilliat Dec.") ¶¶ 4(a), 5, Exh. A.

million.  *See* 28 U.S.C. § 1332(d)(6).  In the removal context, the assessment of whether the amount-in-controversy requirement is satisfied "is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  The appropriate measure of the jurisdictional amount in controversy is "the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint."  *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)).  The amount in controversy is not determined by "the low end of an open-ended claim," but by "a reasonable reading of the value of the rights being litigated."  *Angus v. Shiley, Inc.,* 989 F.2d 142, 146 (3d Cir. 1993*); see also Hart v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977). Moreover, when assessing the amount in controversy for purposes of the CAFA, the Senate Committee Report accompanying CAFA, S. Rep. No. 109-14, makes clear that 28 U.S.C. § 1332(d) should be "interpreted expansively."  S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.[12]

16. Here, the Complaint does not allege a specific amount of monetary relief sought from Defendants.  However, although Defendants deny there is any basis in law or fact for the claims alleged in Plaintiff's Complaint, the allegations therein make it clear that the aggregated amount *in controversy* for the putative class for just two of the asserted claims exceeds $5,000,000, exclusive of interest and costs, as demonstrated below.  *See* 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000.").  A reasonable evaluation of

---

[12] As stated in the CAFA Senate Report, "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case."  S. Rep. No. 109-14, at 42.

the amount in controversy of Plaintiff's asserted claims shows that the amount in controversy easily exceeds the jurisdictional minimum.

(a) **General Statistics.**  To the extent that the Court previously found that Defendants made improper assumptions regarding the total amount in controversy, Defendants have provided even more precise evidence supporting removal. Specifically, Manheim Investments has employed approximately 1,900 non-exempt employees in California during the four-year period preceding the filing of the Complaint (from January 1, 2008 to January 1, 2012, hereinafter identified as the "relevant period").[13]  These individuals worked a total of 476,865 shifts of more than 5 hours during the relevant period and 553,027 shifts of more than 3.5 hours.[14] The average hourly wage earned by non-exempt employees in California during the relevant time period was, on average, $11.66 per hour.[15]

(b) **Meal Periods.**  The Complaint alleges that Defendants failed ever to provide non-exempt employees with meal periods and, therefore, are owed penalty pay.  Specifically, Plaintiff alleges Defendants had a "pattern and practice" of interrupting meal periods and "maintain[ed] an institutionalized unwritten policy that mandate[d] these unlawful practices."[16]  Under California law, an employer who fails to provide a meal period must pay a one (1) hour penalty per missed meal period.  Cal. Lab. Code § 226.7(b).  Accordingly, the amount of meal period penalties potentially at issue is **$5,560,246** (476,865 shifts x $11.66)**.**  This figure is conservative in that it does not include any sums for pre-judgment interest or additional derivative penalties under the California Labor Code Private Attorney General Act ("PAGA").  Even if the figure were recalculated assuming everyone

---

[13]     Marcilliat Dec. ¶¶ 4(a), 5, Exh. A
[14]     Marcilliat Dec. ¶¶ 4(c)-(d) , 5, Exh. A.
[15]     Marcilliat Dec. ¶¶ 4(b), 5, Exh. A.
[16]     Complaint, ¶¶ 23, 27.

earned only minimum wage, the meal period penalty pay would exceed **$3.8 million.**

(c)     **Rest Breaks.**  Similar to Plaintiff's meal period allegations, Plaintiff alleges Defendants had a "pattern and practice" of interrupting rest breaks and "maintain[ed] an institutionalized unwritten policy that mandate[d] these unlawful practices."[17]  Under California law, an employer who fails to authorize or permit a rest break must pay a one (1) hour penalty per missed rest break.  Cal. Lab. Code 226.7(b).  Accordingly, the amount of rest break penalties potentially at issue is approximately **$6,448,295** (553,027 shifts x $11.66).  Recalculated at minimum wage, the rest period exposure, standing alone, would exceed **$4.4 million.**

17.     The total amount in controversy for just two of Plaintiff's claims exceeds **$12 million,** and exceeds **$8 million** if the Court assumed that nobody earned more than minimum wage**.**  Accordingly, there is "a reasonable probability that the stakes exceed" $5,000,000.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005).  Moreover, these summary figures are conservative because they do not factor in the amount in controversy for Plaintiff's other claims, the claims for derivative penalties, or the amount of likely attorneys' fees, all of which may also be taken into account when determining the amount in controversy.  *Galt G/S v. JSS Scandavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).  Accordingly, removal is proper as a matter of law.  28 U.S.C. § 1332(d).

## VENUE

18.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1441(a) because the county in which the State Court Action was pending is found within this District.

---

[17]     Complaint, ¶¶ 23, 27.

# NOTICE OF REMOVAL

19. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Diego.

20. In compliance with 28 U.S.C. § 1446(a), attached is a copy of the state-court papers served herein – the Summons and Complaint that was served on Manheim and CEI (Exhibit A), Manheim's Notice of Service of Process (Exhibit B), and CEI's Notice of Service of Process (Exhibit C).

WHEREFORE, Manheim removes to this Court the State Court Action brought by Plaintiff in the Superior Court of the State of California for the County of San Diego.

Dated: April 9, 2013

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      */s/ Paul Berkowitz*
THOMAS R. KAUFMAN
MICHAEL GALLION
PAUL BERKOWITZ
Attorneys for Defendants MANHEIM INVESTMENTS, INC. and COX ENTERPRISES, INC.